Brent H. Blakely (SBN 157292)
Michael Marchand (SBN 281080)
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone:  (310) 546-7400
Facsimile:  (310) 546-7401

*Attorneys for Plaintiff Spy Optic Inc .*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SPY OPTIC INC.,  a California corporation,<br><br>       Plaintiff<br><br>vs.<br><br>ALIBABA.COM, INC., a Delaware Corporation; ALIBABA.COM HONG KONG LIMITED, a Hong Kong Corporation; ALI BABA GROUP HOLDING LIMITED, a Chinese Corporation, and DOES 1 through 100, inclusive<br><br>       Defendants | Case No. 3:14-cv-4527 EMC<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**1.  DIRECT AND CONTRIBUTORY FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**<br><br>**2.  FALSE ADVERTISING**<br><br>**3.  FEDERAL UNFAIR COMPETITION**<br><br>**4.  COMMON LAW TRADEMARK INFRINGEMENT**<br><br>**5.  CALIFORNIA UNFAIR COMPETITION** |

Plaintiff, Spy Optic Inc., alleges and states as follows:

## COMPLAINT

1.      Plaintiff, Spy Optic Inc. (hereinafter "Plaintiff") is incorporated under the laws of the state of California with its principal place of business at 2070 Las Palmas Drive, Carlsbad, California 92011.

2.     Upon information and belief, Defendant Alibaba.com, Inc. (hereinafter "AI") is a Delaware Corporation with its principle place of business located at 3945 Freedom Circle # 600, Santa Clara, CA 95054.

3.     Upon information and belief, Defendant Alibaba.com Hong Kong Limited (hereinafter "AHKL") is a Hong Kong corporation with its principal place of business at Room 2403-5, 25/F Jubilee Centre, 18 Fenwick Street, Wanchai, Hong Kong.

4.     Upon information and belief, Defendant Alibaba Group Holding Limited (hereinafter, "AGHL") is a Chinese corporation with its principal place of business at 969 West Wen Yi Road Yu Hang District Hangzhou, 311121, China.  AI, AHKL and AGHL are hereinafter collectively referred to as "Alibaba."

5.     Upon information and belief, Alibaba owns, controls and/or operates a well-known network of Internet websites, including, but not limited to, an international e-commerce business to business website connecting sellers to buyers located at www.alibaba.com; an e-commerce marketplace designed for buyers seeking smaller quantities of goods located at www.aliexpress.com; a Chinese e-commerce marketplace for domestic trade in China located at www.1688.com; a Japanese e-commerce marketplace for trade to and from Japan located at www.alibaba.co.jp, and an online retail website in China located at www.taobao.com.

6.     Upon information and belief, the website www.alibaba.com (the "Alibaba Website") is an English-language business-to-business marketplace designed to connect buyers and sellers of a wide variety of products throughout the world.

7.     Upon information and belief, the website located at www.aliexpress.com (the "AliExpress Website") connects wholesale and other buyers to sellers in a wide variety of consumer products for express fulfillment and shipment.

8.     The true names and capacities, whether individual, corporate, associate, or otherwise of DOES 1-100, inclusive, are unknown to Plaintiff, who therefore sues said DOES 1-100 by such fictitious names.  Plaintiff will seek leave of this Court to amend this Complaint to include their proper names and capacities when the same has been

1    ascertained (Defendants AI, AHKL and the DOE Defendants are hereinafter
2    collectively referred to as the "Defendants").

3           9.     Plaintiff is informed and believes, and on that basis alleges, that
4    Defendants and each fictitiously named Defendant participated in and is in some
5    manner responsible for the acts described in this Complaint and the damage resulting
6    therefrom.

7           10.    Plaintiff is informed and believes, and on that basis alleges, that the
8    Defendants have acted in concert and participation with each other concerning each of
9    the claims in this Complaint.

10          11.    Defendants' concerted actions and participation concerning these claims
11   constitutes a conspiracy to unfairly compete with Plaintiff and to violate Plaintiff's
12   rights as alleged herein.

13          12.    Plaintiff is informed and believes, and on that basis alleges, that the
14   Defendants empowered to act as the agent, servant and/or employee of each of the
15   other Defendants, and that all of the acts alleged to have been done by each of them
16   were authorized, approved and/or ratified by each of the other Defendants.

17                        **JURISDICTION AND VENUE**

18          13.    This Court has subject matter jurisdiction over  Plaintiff's claims for
19   direct and contributory trademark infringement, direct and contributory trademark
20   counterfeiting, false advertising, unfair competition and false designation of origin
21   pursuant to 28 U.S.C. §§ 1331 and 1338(a) as a case arising under the Lanham Act, 15
22   U.S.C. §§ 1051 et seq., and supplemental jurisdiction over the claims for state law
23   trademark infringement and unfair competition and unjust enrichment pursuant to 28
24   U.S.C. §§ 1338(b) and 1367(a) because those claims are joined with substantially
25   related federal claims.

26          14.    Upon information and belief, Alibaba does business throughout the world,
27   including within this judicial district.

28          15.    Upon information and belief, Alibaba markets and directs its many

**COMPLAINT FOR DAMAGES**

websites to the United States and upon information and belief is expanding its presence in the United States, including within this judicial district.

16.     Upon information and belief, individual(s) and entity(ies) throughout the United States, including within this judicial district, have used and will continue to use the Alibaba Website and the AliExpress Website to buy and sell goods.

17.     Any user of the Internet, including those located within this judicial district, can access the Alibaba Website and the AliExpress Website in order to browse for goods, purchase goods and contact suppliers of goods.

18.     Upon information and belief the Alibaba Website and the AliExpress Website allow users to purchase goods from suppliers that are located within this judicial district.

19.     Upon information and belief, at all relevant times, the Alibaba Website and the AliExpress Website allow buyers and sellers throughout the United States, including those located within this judicial district, to create personalized accounts for use on the Alibaba Website and the AliExpress Website.

20.     Alibaba's actions in this judicial district, as set forth herein, have harmed and will undoubtedly do further harm to Plaintiff, a California corporation doing business within this judicial district.

21.     This Court has personal jurisdiction over Alibaba by virtue of its doing business and substantial contacts within this judicial district, along with its commission of tortious and/or infringing acts inside and outside of this judicial district, that have an effect within this judicial district.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## BACKGROUND OF THE CONTROVERSY

**A. Plaintiff's Business and Trademarks**

23.     Plaintiff is and has for many years been engaged in the extensive development, advertising, and marketing of sunglasses, sunglass products, wearing apparel and sporting goods in intrastate and interstate commerce.  In connection

therewith, Plaintiff uses and has previously used in interstate commerce and in the State of California the trademarks SPY, SPY OPTIC and a cross logo, among others, in connection with its goods and/or services and Plaintiff is the owner of such marks.

24.     The United States Patent and Trademark Office on June 18, 1996 granted a federal trademark registration to Plaintiff for the trademark "SPY" for glasses and sunglasses as Registration No. 1,981,513.  A copy of this trademark registration is attached as **Exhibit "1."**  Plaintiff is the owner of the mark and registration, and this registration is incontestable pursuant to 15 U.S.C. § 1065.

25.     The United States Patent and Trademark Office on October 27, 2009 granted a federal trademark registration to Plaintiff for the trademark "SPY" for bags, namely, backpacks and sports bags as Registration No. 3,700,605.  A copy of this trademark registration is attached as **Exhibit "2".**  Plaintiff is the owner of the mark and registration.

26.     The United States Patent and Trademark Office on March 13, 2007 granted a federal trademark registration to Plaintiff for the trademark "SPYOPTIC" for wearing apparel, namely t-shirts, shirts, sweatshirts, pants, shorts, jackets, hats, visors, caps, belts and shoes as Registration No. 3,218,701.  A copy of this trademark registration is attached as **Exhibit "3".**  Plaintiff is the owner of the mark and the registration, and the registration is incontestable pursuant to 15 U.S.C. § 1065.

27.     The United States Patent and Trademark Office on February 16, 2010 granted a federal trademark registration to Plaintiff for the trademark "SPY" for retail store services and on-line retail store services featuring sunglasses, sports goggles, and wearing apparel as Registration No. 3,750,166.  A copy of this trademark registration is attached as **Exhibit "4".** Plaintiff is the owner of the mark and registration.

28.     The United States Patent and Trademark Office on June 30, 2009 granted a federal trademark registration to Plaintiff for the trademark "SPYOPTIC" for sunglasses and sports goggles as Registration No. 3,648,121.  A copy of this trademark registration is attached as **Exhibit "5".** Plaintiff is the owner of the mark and

registration.

29.     The United States Patent and Trademark Office on July 15, 2008 granted a federal trademark registration to Plaintiff as Registration No. 3,468,936 for the cross logo, shown below:



for bags, namely backpacks and sports bags, and for wearing apparel, namely t-shirts, shirts, sweatshirts, pants, shorts, jackets, hats, visors, caps, belts and shoes. A copy of this trademark registration is attached as **Exhibit "6".** Plaintiff is the owner of the mark and the registration, and the registration is incontestable pursuant to 15 U.S.C. § 1065.

30.     The United States Patent and Trademark Office on May 12, 1998 granted a federal trademark registration to Plaintiff as Registration No. 2,157,268 for the cross logo shown below:

for sunglasses.  A copy of such trademark registration is attached as **Exhibit "7"**. Plaintiff is the owner of the mark and the registration, and the registration is incontestable pursuant to 15 U.S.C. § 1065.  (The trademarks as shown in Exhibits 1-7 are hereinafter collectively referred to as the "SPY Trademarks").

31.     Plaintiff owns and has used and continues to use the SPY Trademarks in connection with its extensive development, advertising, and marketing of sunglasses, sunglass products, wearing apparel and sporting goods since at least as early as the dates specified in the registrations of the Spy Trademarks.  Plaintiff's SPY Trademarks

and its right to utilize the SPY Trademarks in connection with its extensive development, advertising, and marketing of sunglasses, sunglass products, wearing apparel and sporting goods have become incontestable with respect to registration Nos. 1,986,513 (Exhibit 1), 3,218,701 (Exhibit 3), 3,468,936 (Exhibit 6) and 2,157,268 (Exhibit 7).

32.    Plaintiff has expended substantial sums of money in advertising and promoting its goods under the SPY Trademarks using Plaintiff's website, www.spyoptic.com (hereinafter "Plaintiff's Website").   A printout from a portion of Plaintiff's Website is attached hereto as **Exhibit "8"**.

33.    Plaintiff packages its sunglasses, sunglass products, wearing apparel and sporting goods under the SPY Trademarks with distinctive labels and graphics (hereinafter "the Spy packaging") used to further market and promote Plaintiff's products, as well as stickers available for purchase and/or included with the point of sale of these products (hereinafter "the Spy stickers").  Photographs of examples of packaging for Plaintiff's products sold under the SPY Trademarks are attached hereto as **Exhibit "9."**

34.    In addition to the Spy Trademarks, Plaintiff has sold numerous products with distinctive product names including, but not limited to, Helm, Flynn, Touring, Fold Blok, Murena, Discord, Honey and Farrah (hereinafter referred to as "Spy Styles").

35.    As a consequence of Plaintiff's advertising and use of the SPY Trademarks, Spy Packaging and Spy Styles, these marks, packaging and product styles have become source identifiers and/or have developed secondary meaning identifying the business operated by Plaintiff.

**B. The Alibaba and AliExpress Websites and Alibaba's Infringing Acts**

36.    Defendants use the Spy Trademark, Spy Packaging, Spy Styles and product depictions on its websites in a manner which falsely indicates that the suppliers on the Alibaba and other websites are authorized sellers of genuine Spy

1    products or that Plaintiff has in some manner endorsed the sale of these products.

2         37.    On The Alibaba Website, users are presented with a search box for

3    searching for products.  Upon entering, for example, the term "Spy Optic," a series of

4    listings appear which, in many instances, include unauthorized uses of the Spy

5    Trademarks suggesting that the products are authorized by Spy. Many of these listings

6    are for counterfeit Spy merchandise.  An example of one such listing includes a screen

7    capture of a webpage attached hereto as **"Exhibit 10"** showing counterfeit

8    merchandise, where the Spy Trademarks are shown on the product with the product

9    details with a reference to "Spy Optic Sunglasses", amongst others.

10        38.    At the bottom of the webpage as shown in **Exhibit 10**, in addition to the

11   offending listing, content is generated that utilizes the Spy Trademarks, which upon

12   information and belief is generated by Alibaba's website. For example, under the

13   heading "Related Searches", there are references to "spy optic sunglasses" and "spy

14   snow goggles."

15        39.    In addition, a separate heading titled "You may also be interested in:,"

16   includes references to "spy sunglasses", "spy sunglasses mirror" and "sunglasses 2013

17   spy".  Included therein is a drop down menu for "View more", which links to

18   additional Alibaba website generated content as shown, for example, at a different

19   location on the Alibaba Website as shown in **Exhibit 11,** which is attached hereto. The

20   Spy Trademarks appear in a category listing "spy optic sunglasses Manufactures:"

21   which include links for "spy sunglasses Manufacturers", "spy sunglasses mirror

22   Manufacturers", and "sunglasses 2013 spy Manufactures." Other category listings

23   include "China Spy optic sunglasses," "spy optic sunglasses Promotion," and "spy

24   optic sunglasses wholesalers." The link "spy sunglasses Manufacturers" directs the

25   user to an Alibaba generated listing page referencing thousands of products and

26   numerous suppliers.  Attached hereto as **Exhibit 12** is a screen download of the first

27   page of suppliers, most of which, if not all, appear to be listed with "Qualification

28   Proof" as verified "Gold Suppliers."  Upon information and belief, the information

**COMPLAINT FOR DAMAGES**

page describing verification on the Alibaba.com Website states "The verification of suppliers on Alibaba.com serves to safeguard buyers by ensuring suppliers are genuine and legitimate companies...A&V Checked suppliers are Gold Suppliers who have passed authentication and verification inspection by Alibaba.com...." Attached hereto as **Exhibit 13** is the information page describing verification on Alibaba.com. As such, Alibaba is leading users to believe that Alibaba has vetted certain suppliers, and that this vetting process ensures that vetted suppliers provide authentic and genuine products, when in fact, upon information and belief, many of the identified "Gold Suppliers" are providing counterfeit merchandise that include Plaintiff's Spy Trademarks. In addition, upon information and belief, Defendants' verification of the "Gold Suppliers" places Defendants in the position of a principal over the Gold Suppliers as their agents, and therefor ratify the tortious activities of the Gold Suppliers by virtue of their knowledge of the infringing activity of the Gold Suppliers while retaining the benefits of their membership of the Gold Suppliers.

40. As a further example, attached is a website printout at **"Exhibit 14A"** for the Alibaba.com generated link http://www.alibaba.com/corporations/spy_ken_block.html that directs the users to a listing of suppliers, of which most, if not all, are listed as "Gold Suppliers". Upon information and belief, many of the listings offer counterfeit goods, or are otherwise using the Spy Trademarks in an unauthorized manner. As such, Alibaba is leading users to believe that Alibaba has vetted the listed suppliers and that such suppliers provide authentic and genuine products authorized by Plaintiff, when in fact, upon information and belief, many of the identified "Gold Suppliers" are providing counterfeit merchandise that include Plaintiff's Spy Trademarks. In addition, attached as **"Exhibit 14B"** is a printout of the first page of the "viewsource" code of the website showing the use of keywords "Spy Ken Block, Spy Ken Block Manufacturers, Spy Ken Block Suppliers, Spy Ken Block Suppliers Directory." As such, Alibaba is using the Spy Trademarks and the name "Ken Block" to direct search engines to this listing of suppliers that are not authorized to use the Spy

Trademarks, many of which are selling counterfeit products.  In addition, attached as **"Exhibit 14C"** is a product listing for one of the suppliers listed in Exhibit 14A demonstrating what appears to be a listing of counterfeit merchandise, unauthorized use of the Spy Trademarks, copying of graphics of Plaintiff, and the use of the name and likeness of Ken Block, all of which together falsely suggest that the products are authorized products, or are otherwise endorsed when they are not.

41.    In reference to the listings of **Exhibit 11**, the link "spy sunglasses Manufacturers" may also direct the user to an Alibaba generated listing page at the website subdirectory http://www.alibaba.com/spy-sunglasses-manufacturers.html. The "view page source" content on the webpage of **Exhibit 12**, upon information and belief, includes html code that contains the Spy Trademarks in the keywords and meta tags of the website, including but not limited to "Spy Sunglasses, Spy Sunglasses Manufacturers, Spy Sunglasses Suppliers, Spy Sunglasses Exporters, Spy Sunglasses Manufacturing Companies, Spy Sunglasses Traders, Spy Sunglasses Wholesalers and Spy Sunglasses Producers."  See "**Exhibit 15**" for a printout of the first page of the "view page source" content which, upon information and belief, is associated with the listing of Exhibit 12.  As such, Alibaba appears to be purposefully directing search engines to the http://www.alibaba.com/spy-sunglasses-manufacturers.html landing page using the Spy Trademarks, falsely suggesting that the listed manufacturers are selling authorized Spy Optic merchandise of Plaintiff.  This webpage promotes counterfeit Spy Sunglasses offered by "Gold Suppliers" which claim to have been vetted by Alibaba, whose endorsement suggests to prospective consumers that the sunglasses offered by these suppliers are genuine and authentic Spy products.  Upon information and belief, Alibaba also uses the Spy Trademarks in the meta data of other landing pages on The Alibaba Website, which include, but are not limited to, a "showroom" at www.alibaba.com/showroom/spy-sunglasses.html; "products" at www.alibaba.com/products/spy_sunglasses.html; and "corporations" at http://www.alibaba.com/corporations/spy_sunglasses.html.  Upon information and

1    belief, "**Exhibit 16**" attached hereto evidences a collection of the first pages for the

2    "view page source" content of many of the aforementioned landing pages that appears

3    to use the Spy Trademarks in meta data to create an association with these various

4    Alibaba landing pages.  Upon information and belief, these webpages promote

5    counterfeit Spy Sunglasses offered by "Gold Suppliers" which claim to have been

6    vetted by Alibaba, whose endorsement suggests to prospective consumers that the

7    sunglasses offered by these suppliers are genuine and authentic Spy products.

8          42.    Upon information and belief, additional landing pages and product listings

9    on The Alibaba Website that contain the Spy Trademarks in their content and/or meta

10   data also include, but are not limited to, http://www.alibaba.com/sunglasses-2013-spy-

11   promotion.html ("sunglasses 2013 Spy promotion"); http://www.alibaba.com/product-

12   detail/Discount-popular-new-cheap-spy-sunglasses_1756088069.html; ("Discount

13   New Cheap Spy Sunglasses" and "Dollar King Spy Sunglasses");

14   http://www.alibaba.com/product-detail/Folding-spy-sunglasses-hot-sale-

15   fashion_1920184375.html ("Folding Spy Sunglasses");

16   http://www.alibaba.com/product-detail/collapsible-Spy-Sunglasses-

17   1410_1857293751.html ("Collapsible Spy Sunglasses" and  "Brand name:Spy");

18   http://www.alibaba.com/product-detail/Colored-Ken-Block-Eyewar-Spy-

19   Sunglasses_1827170680.html ("Style:  Spy Sunglasses" and "Colored Ken Block Spy

20   Sunglasses"); and http://www.alibaba.com/product-detail/2013-popular-fashion-spy-

21   sunglass_1403265742.html ("Popular Fashion Spy Sunglasses" and "Name: Fashion

22   Spy Sunglasses").  Upon information and belief, these webpages likewise promote

23   counterfeit Spy Sunglasses offered by "Gold Suppliers" who have purportedly been

24   vetted as "Verified Suppliers" by Alibaba, thereby indicating to prospective consumers

25   that the sunglasses offered by these suppliers are genuine and authentic Spy products.

26         43.    The prices per unit listed on The Alibaba Website and The AliExpress

27   Website for the unauthorized and/or counterfeit products are significantly lower than

28   the wholesale price at which Plaintiff's sells its products directly to retailers or

1   authorized distributors, and are significantly lower than the retail price at which

2   Plaintiff's retailers or authorized distributors sell those products to customers.

3        44.    Upon information and belief, the majority of, if not all of the products

4   being promoted on The Alibaba Website and The AliExpress Website, are not

5   manufactured, approved, or otherwise authorized by or on behalf of the Plaintiff.

6   Alibaba and the purported suppliers of these products are simply attempting to exploit

7   and trade off of the fame and good will of the Spy Trademarks to sell products.

8        45.    Upon information and belief, the majority if not all of the products on The

9   Alibaba Website and The AliExpress Website that use the Spy Trademarks, and thus

10  purport to be genuine products, are actually counterfeit or gray market merchandise,

11  i.e., sunglasses sold under the Spy Trademarks, and/or bearing one or more of Spy

12  Trademarks, that were not manufactured, approved or otherwise authorized by

13  Plaintiff.

14       46.    Upon information and belief, all or virtually all of the so called

15  "suppliers" selling the products on The Alibaba Website and The AliExpress Website

16  are not authorized distributors of Plaintiff, nor are they retailers who purchase product

17  directly from Plaintiff.

18       47.    Alibaba's grouping of products in the categories "spy sunglasses", along

19  with Alibaba's usage of Spy Trademarks on its websites and meta data to attract

20  browsers to the products actively encourages users searching for Plaintiff's products to

21  purchase counterfeit items or goods sold by unauthorized distributors and other

22  products not manufactured on behalf of Plaintiff and which are not authentic products

23  of Plaintiff.

24       48.    Upon information and belief, the Alibaba Website and the AliExpress

25  Websites include: (a) products that are identified as Plaintiff's products, but are not

26  actually Plaintiff's products, (b) products that are identified using the Spy Trademarks,

27  but were not manufactured, approved or otherwise authorized by Plaintiff, and (c)

28  products offered in conjunction with depictions of Spy Trademarks, packaging or

COMPLAINT FOR DAMAGES

1    products that include the Spy Trademarks, but were not manufactured, approved or

2    otherwise authorized by Plaintiff.  These products, combined with the products

3    promoted on the Alibaba Website and the AliExpress Website, will hereinafter

4    collectively be referred to as the "Offending Products."

5         49.    Upon information and belief, Alibaba, along with those suppliers offering

6    the Offending Products for sale on the Alibaba Website and the AliExpress Website,

7    have intentionally used the Spy Trademarks, Plaintiff's packaging, and product

8    depictions of  Plainiff's products or counterfeit products held out as authentic

9    merchandise to attract purchasers to the Offending Products, while either knowing or

10   being willfully blind to the fact that the Offending Products are not manufactured,

11   approved, or otherwise authorized by Plaintiff.

12         50.    Along with the prominent use of the Spy Trademarks, Plaintiff's

13   packaging and product depictions, when used with the "Gold Supplier" designation,

14   create a false and misleading designation of fact, by representing to buyers that the

15   sellers of the Offending Products are legitimate and authorized sellers of authentic

16   products of Plaintiff.

17         51.    Alibaba provides a system for IP holders to lodge complaints against

18   listings appearing on websites controlled by Alibaba named "AliProtect."  To use

19   AliProtect, a user uploads its intellectual property certificates, and uses those

20   certificates to lodge complaints against offending listings.  Plaintiff created an

21   AliProtect account and followed the instructions as mandated by the system and has

22   uploaded one or more of the Spy Trademarks into the AliProtect system.

23         52.    Plaintiff has used the AliProtect system to lodge thousands of complaints

24   regarding violations and infringement related to the Spy Trademarks.  Based upon

25   information saved in Plaintiff's AliProtect account, upon information and belief,

26   Plaintiff has lodged, as of September 2014, over 12,000 complaints regarding the

27   violation of its intellectual property rights.  With regard to objections under the

28   AliProtect system, each Offending Product listing must be separately identified and

lodged as a separate complaint.  While a multitude of specific listings objected to by Plaintiff have been removed as a result of Plaintiff's complaints, in only a few certain instances has Alibaba has retained the listing of the Offending Product.  However, despite thousands of listing take downs related to Spy Trademarks, Offending Products remain available on The Alibaba Website and The AliExpress Website, and upon information and belief, more and more Offending Products continue to be added daily.

53.    Upon information and belief, Alibaba has failed to eliminate repeat infringers from the Alibaba Website and/or the AliExpress Website who continue to offer Offending Products, or otherwise unlawfully use the Spy Trademarks despite multiple claims filed by Plaintiff against these repeat infringers through the "AliProtect" system.  For example, despite several takedown requests by Plaintiff through the Alibaba AliProtect system against listings posted by Shenzhen Yashiwei Optical  Co. Ltd. where Alibaba removed the listings, upon information and belief, Shenzhen Yashiwei Optical  Co. Ltd. as of September, 2014 remains a "third year" verified Gold Supplier and has since posted additional listings with unauthorized use of the Spy Trademarks.

54.    On the Alibaba Website and the AliExpress Website, Alibaba's own "Terms of Use" (updated June 11, 2012) states in paragraph 5.4, "Each Member represents, warrants and agrees that … (b) any User Content that you submit, post or display does not infringe or violate any of the copyright, patent, trademark, trade name, trade secrets or any other personal or proprietary rights of any third party ("Third Party Rights"); and (c) you have the right and authority to sell, trade, distribute or export or offer to sell, trade, distribute or export the products or services described in the User Content and such sale, trade, distribution or export or offer does not violate any Third Party Rights."  Also, in paragraph 5.5 it states that "Each Member further represents, warrants and agrees that the User Content that you submit, post or display shall: (a) be true, accurate, complete and lawful; and (b) not be false, misleading or deceptive…."  A screen capture from the Alibaba Website featuring these terms is attached hereto as

"**Exhibit 17.**"

55.     Plaintiff has not given Alibaba permission to allow suppliers that use the Alibaba Website and/or the AliExpress Website to sell the Offending Products, nor has Plaintiff issued any certificate of authorization to Alibaba.

56.     Despite Plaintiff lodging thousands of AliProtect complaints related to the Spy Trademarks, where the listings were taken down, and despite the fact that these thousands of takedowns demonstrate continuing violations of Alibaba's Terms of Use, Alibaba continues to ignore and turn a willful blind eye to the unauthorized use of the Spy Trademarks in product listings and, in fact, is independently using the Spy Trademarks as an indexing component and means for searching "spy sunglass" suppliers on The Alibaba Website and The AliExpress Website so as to attract prospective purchasers to the Offending Products, and to continue to promote products and suppliers, including the Gold Suppliers described above, who display products that are not genuine and/or authorized products of Plaintiff**.**

57.     Alibaba's use of the Spy Trademarks and Plaintiff's packaging and product depictions has caused, and is likely to continue to cause, confusion or mistake among the purchasing public as to the origin, affiliation, connection and/or association of Plaintiff's products with the Offending Products.

58.     Alibaba's promotion of products that are not genuine and/or authorized products of  Plaintiff in conjunction with the Spy Trademarks and Plaintiff's packaging and product depictions, promotion of counterfeit products of Plaintiff, and promotion of suppliers who are not authorized suppliers of Plaintiff has caused, and is likely to continue to cause, confusion or mistake among the purchasing public as to the origin, affiliation, connection or association of Plaintiff's products with the Offending Products, and is false and misleading.

59.     Defendants' conduct has damaged Plaintiff.  Such damage includes, without limitation, a significant loss of sales for Plaintiff, its retail customers and its authorized distributors.

60.    Defendants' conduct will, unless restrained by this Court, further impair the value of Plaintiff's distinctive trademarks and the goodwill associated therewith, causing irreparable harm to Plaintiff.

61.    Through the actions described herein, Alibaba and the suppliers using the Alibaba Website and the AliExpress Website have acted willfully with the intention to unfairly compete with Plaintiff.

62.    Upon information and belief, by the acts herein complained of, Defendants have made substantial profits to which it is not equitably entitled based on its use of the Spy Trademarks, Plaintiff's packaging and product depictions, promotion of counterfeit products of Plaintiff, and promotion of suppliers who are not authorized suppliers of Plaintiff, all for commercial purposes.

63.    By the aforementioned acts herein complained of, Plaintiff has suffered great detriment in a sum which cannot be ascertained at this time.

64.    Defendants threaten to, unless restrained, continue the acts complained of herein, all to Plaintiff's irreparable damage, and the recovery of damages alone will not afford Plaintiff adequate relief.

65.    Defendants' conduct, acts and omissions complained of herein were willful and done with malice and oppression, with Alibaba's knowledge, and for the purpose and with the desired and actual effect of causing Plaintiff substantial damage. Plaintiff is therefore entitled to and hereby requests exemplary and punitive damages, according to proof.

# FIRST CLAIM FOR RELEIF

## (Direct and Contributory Trademark Infringement and Counterfeiting, 15 U.S.C. §§ 1114(1), 1116(d), and 1117(b)-(c))

66.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

67.    Alibaba's unauthorized use of the Spy Trademarks in connection with the

sale and offering for sale of the Offending Products constitutes direct and/or contributory infringement of the rights of Plaintiff in and to its federally registered Spy Trademarks, in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1116(d).

68.   The SPY Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from the Spy Products offered, sold or marketed under the SPY Trademarks.

69.   Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

70.   Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Spy will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SPY Trademarks.

71.   The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful acts.

72.   Additionally and with full knowledge of Plaintiff's rights in the Spy Trademarks, Alibaba had contemporaneous knowledge that the goods bearing the Spy Trademarks that were offered for sale through Alibaba's listing of suppliers were, in fact, counterfeit, or were willfully blind to the fact that such goods were counterfeit.

73.   Defendants, by offering online marketing, financing, shipping, payment processing, and/or escrow services to its listed suppliers that allowed its listed suppliers to infringe upon the Spy Trademarks, aided, facilitated, participated in, and materially contributed to the sale of Counterfeit Products in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).   For example and without limitation, Defendants participated in the sales of the Offending Products by grouping and indexing of the Offending Products using the Spy Trademarks and "Gold Supplier" designations to attract browsers to the Offending Products.

74.   By providing these services, Defendants supplied the necessary marketplace for the sale of the Offending Products, and Defendants received a direct financial benefit for providing such services.

75. Defendants exercised control over the means of the infringement and counterfeiting described above by knowingly providing essential services to merchants selling the Offending Products.

76. Defendants' actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of the Offending Products, and are likely to deceive the public into believing that the Offending Products originate from, are associated with, or are otherwise authorized by Plaintiff, to the damage and detriment of Plaintiff's reputation, goodwill, and sales.

77. As such, Defendant's actions constitute contributory trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

## SECOND CLAIM FOR RELIEF

### (False Advertising, 15 U.S.C. § 1125(a)(1)(A) and (B))

78. Spy Optic incorporates herein by reference the allegations contained in paragraphs 1 through 77, as if fully set forth herein.

79. Defendants' listing of products that are not genuine products of Plaintiff in conjunction with the Spy Trademarks, Spy Styles, Plaintiff's packaging and/or product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

80. Defendants' listing of products that are not authorized products of Plaintiff in conjunction with the Spy Trademarks, Spy Styles, Plaintiff's packaging and/or product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

81. Defendants' listing of suppliers that are not authorized suppliers of Plaintiff's Spy Optic products in conjunction with the Spy Trademarks, Spy Styles, Plaintiff's packaging and/or product depictions constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and

(B).

82.     Alibaba's grouping and indexing of the Offending Products using the Spy Trademarks and "Gold Supplier" designations to attract browsers to the Offending Products, constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

83.     The metadata and source code for the Alibaba Website pages that feature the Offending Products which, upon information and belief, are designed by Alibaba to attract browsers searching for Plaintiff's sunglasses and goggle products to the Alibaba Website constitutes infringement and the use of false descriptions and representations in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).

### THIRD CLAIM FOR RELIEF

### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)

84.     Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 83, as if fully set forth herein.

85.     Customers and potential customers familiar with Plaintiff's sunglasses will be likely to believe that the Offending Products and/or that the product listings on Defendants' website(s) are actually products from Plaintiff, or that the Offending Products and/or product listings on Defendants' websites are related to, or sponsored by Plaintiff.

86.     Defendants' usage of the Spy Trademarks and images of Plaintiff's packaging and product depictions are likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection or association of Plaintiff with the Offending Products, and/or as to the origin, sponsorship, or approval of the Offending Products by Plaintiff, in violation of 15 U.S.C. § 1125(a)(1).

87.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Spy Trademarks and Plaintiff.

### FOURTH CLAIM FOR RELIEF

**(Direct and Contributory Common Law Trademark Infringement)**

88.    Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 87, as if fully set forth herein.

89.    Alibaba's infringing acts, as set forth herein, constitute direct and contributory infringement of the common law trademark rights it enjoys as a result of its continued use of Spy Trademarks, under applicable common law.

90.    Plaintiff owns and enjoys common law rights to the Spy Trademarks in California and in this judicial district.

91.    Alibaba's unlawful acts in appropriating Plaintiff's Spy Trademarks were intended to capitalize on Plaintiff's goodwill for Alibaba's own pecuniary gain. Plaintiff has expended substantial time, resources and effort to obtain an excellent reputation for itself and its Spy Trademarks.  As a result of Plaintiff's efforts, Alibaba is now unjustly enriched and is benefiting from property rights that rightfully belong to Plaintiff.

92.    Alibaba's unauthorized use of the Spy Trademarks has caused and is likely to cause confusion as to the source of the Offending Products, all to the detriment of Plaintiff.

93.    Alibaba's acts are willful, deliberate, and intended to confuse the public and to injure Plaintiff.

94.    Alibaba's acts constitute common law trademark infringement and unfair competition under California law.

95.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Alibaba's unlawful acts unless Alibaba is permanently enjoined from its unlawful conduct.

96.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiff in reckless disregard of Plaintiff's rights.  Said conduct was despicable and harmful to Plaintiff and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the

1   Alibaba and to deter it from similar such conduct in the future.

2         97.   Plaintiff has no adequate remedy at law.

3         98.   In light of the foregoing, Plaintiff is entitled to injunctive relief
4   prohibiting Alibaba from using the Spy Trademarks, or any marks that are identical
5   and/or confusingly similar to the Spy Trademarks, and to recover all damages,
6   including attorneys' fees, that Plaintiff has sustained and will sustain and all gains,
7   profits and advantages obtained by Defendant as a result of its infringing acts alleged
8   above in an amount not yet known, and the costs of this action.

9         99.   Alibaba's infringing acts, as set forth herein, constitute direct and
10  contributory infringement of the common law trademark rights it enjoys as a result of
11  its continued use of Spy Trademarks, under applicable common law.

12                          **FIFTH CLAIM FOR RELIEF**

13        **(Common Law Unfair Competition CAL. BUS. & PROF. CODE §§ 17200,**
14                    **17500, *et seq*. and Common Law)**

15        100.  Plaintiff incorporates herein by reference the allegations contained in
16  paragraphs 1 through 99, as if fully set forth herein.

17        101.  Defendants have unlawfully, unfairly, and deceptively engaged in
18  practices violating California law, including, but not limited to, aiding, abetting and
19  assisting and benefitting from the passing off products that were advertised using Spy
20  Trademarks and/or are Counterfeit products using Spy Trademarks causing a
21  likelihood of confusion and/or misunderstanding as to the source of their goods or
22  services, causing a likelihood of confusion and/or misunderstanding as to an affiliation,
23  connection, or association with genuine products of Plaintiff, representing that
24  products offered on Defendants' Website(s) have Plaintiff's approval when they do
25  not, and engaging in other conduct which creates a likelihood of confusion or
26  misunderstanding among the public.

27        102.  Defendants' acts as set forth herein constitutes direct and contributory
28  trademark infringement of Plaintiff's common law trademark rights in the State of

California and elsewhere, and is thus a violation of California, Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.*, along with a violation of California common law unfair competition.

103. Defendants acts as set forth herein including acts of unfair competition, false advertising, common law trademark infringement threaten to dilute and/or have diluted the distinctive quality of the Spy Trademarks and have injured Plaintiff's business reputation in violation of California, Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.*, along with a violation of California common law unfair competition.

104. By these actions, Defendants have engaged in unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200, 17500, *et seq.*, along with a violation of California common law unfair competition, and, as a result, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

105. Upon information and belief, Defendants profit from the listings using Spy Trademarks, Spy Styles, Spy Packaging and sale of Offending Products on the Alibaba Website and AliExpress Websites. As such, Alibaba has been unjustly enriched by its usage of Spy Trademarks, Spy Styles and Spy Packaging along with the marketing and sale of the Offending Products and promotion of the suppliers, to the detriment and at the expense of Plaintiff. It would be unjust for Defendants to retain this benefit, and Defendants should not be permitted to reap the benefits of its wrongful conduct

106. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Spy Trademarks and Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment against Alibaba as follows:

COMPLAINT FOR DAMAGES

A.     That Alibaba.com, Inc. and Alibaba.com Hong Kong Limited, and each of their officers, agents, servants, employees, representatives, Parent companies and all others in active concert or participation with them, either directly or indirectly, be preliminarily and permanently enjoined and restrained from:

1.     Using the Spy, Spy Optic, Cross Logos, Spy Styles, Plaintiff's product packaging, and/or product depictions, and any other designation that creates a likelihood of confusion, mistake, or deception with respect to Plaintiff, Spy Optic Inc., or its Spy Optic Sunglasses or Spy Optic goggles;

2.     Doing any other act or thing likely to induce or that induces the mistaken belief that Alibaba or the Alibaba Website or the AliExpress  Website and any suppliers offering non-genuine Spy Optic products are in any way affiliated, connected, or associated with Spy Optic Inc. or Spy Optic Sunglasses or Spy Optic goggles, or other products offered by Spy Optic Inc.'s authorized distributors;

3.     Licensing, authorizing and/or permitting others to use the Spy Trademarks or any other confusingly similar mark;

4.     Licensing, authorizing, and/or otherwise permitting others to sell products designated and/or labeled using the Spy Trademarks  or any other confusingly similar mark;

5.     Licensing, authorizing and/or otherwise permitting others to sell products in conjunction with depictions of products bearing the Spy Trademarks, Plaintiff's packaging or depictions of Plaintiff's products, other than genuine products offered by Spy Optic Inc. and its authorized distributors; and

6.     Injuring Spy Optic Inc.'s business reputation and the goodwill associated with the Spy Trademarks, Plaintiff's products, and from otherwise unfairly competing with Spy Optic Inc. in any manner whatsoever.

B.     That Defendants  be required to immediately remove all uses of, references to and depictions of the Spy Optic Sunglasses using the Spy Trademarks,

Spy Styles, Plaintiff's packaging and/or Plaintiff's products from any website, including, but not limited to, the Alibaba Website and the AliExpress Website; unless uses, references or depictions are used exclusively in connection with sales of products by authorized distributors of Spy Optic Inc.;

C.    That Defendants provide an accounting of all profits derived from Defendants' trademark infringement, false designation of origin of Plaintiff's trademark rights along with any false advertising, and that Alibaba pay such profits to Plaintiff along with any damages sustained by Plaintiff and Plaintiff's costs of the action (including interest); and that such amount be trebled, all pursuant to 15 U.S.C. § 1117(a);

D.    That Defendants pay to Plaintiff its reasonable attorney's fees and such other compensatory damages and costs that this Court determines is fair and appropriate pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants pay to Plaintiff statutory damages in accordance 15 U.S.C. § 1117(c) as the Court considers just.

F.    That Defendants pay to Plaintiff an amount that this Court determines is fair to compensate Plaintiff due to Alibaba's California statutory and common law unfair competition,  and compensation for unjust enrichment, including an award of punitive damages for the wanton and willful misconduct of Defendants;

G.    Such other and further relief as the Court deems proper and necessary.

Dated:  January 28, 2015              BLAKELY LAW GROUP


By:    /s/ Michael Marchand
       Brent H. Blakely
       Michael Marchand
       ***Attorneys for Plaintiff***
       ***Spy Optic Inc.***

1

## DEMAND FOR JURY TRIAL

2      Pursuant to FRCP 38(b), Plaintiff, Spy Optic Inc. hereby demands a jury trial as

3  to all claims in this litigation.

4

5

6  Dated:  January 28, 2015                    BLAKELY LAW GROUP

7

8                                     By:    /s/ Michael Marchand
                                            Brent H. Blakely
9                                           Michael Marchand
                                            ***Attorneys for Plaintiff***
10                                          ***Spy Optic Inc.***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28